UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GREGORY BONTEMPS, | No. 2:12-cv-1480 GGH P |
| Petitioner, | |
| v. | <u>ORDER</u> and |
| MIKE MCDONALD, WARDEN, | <u>FINDINGS & RECOMMENDATIONS</u> |
| Respondent. | |

*Introduction and Summary*

Petitioner was convicted of one count of spousal abuse, one count of criminal threats and one count of intimidating a witness. He received a sentence of 25 years to life on each count with two of the sentences stayed pursuant to Cal. Penal Code § 654. Petitioner raises the identical issues which he raised on direct review in the Court of Appeal, and on petition for review to the California Supreme Court.[1] The gravamen of his petition concerns the admission of the stipulated evidence that petitioner had a "violent criminal past." He also adds an ineffective assistance of counsel claim on account of defense counsel's stipulation to petitioner's "violent

---

[1] Petitioner filed a plethora of habeas petitions in the state court. However, those petitions have no bearing on the outcome of this federal proceeding in that the issues raised on direct review are the issues raised herein. Respondent does not make any timeliness arguments which might make review of those state petitions necessary.

criminal past," and failure to ask for a limiting instruction. He also seeks relief because the trial court refused to "strike a strike" when it sentenced him as a Three Strikes offender.

Petitioner cannot complain in this federal proceeding to the admission of character evidence, even if the admission of such evidence was properly construed as such. Moreover, this federal court has no authority to review the discretionary decision under state law to not relieve petitioner of one of his strikes (prior convictions). The petition should be denied.

*Facts*

The undersigned takes the facts as reported by the California Court of Appeal, the last state court to render an explained decision on the issues presented here.

> In July 2008, Charlene and defendant, her then husband, got into an argument about her son, Anthony. Over the next few hours, Charlene and defendant both drank alcohol and continued to argue. After Charlene fell asleep, defendant woke her by grabbing her by the hair, pulling her into a sitting position and saying "Bitch, make me some dinner." Charlene fought back and defendant swung her down toward the ground and punched her in the back and in the nose. Blood gushed out of her nose covering her hands and face and spreading to her clothing, the sheets, the bedroom and bathroom floors, furniture, and the walls.
>
> While her nose was still bleeding, defendant told her several times he would kill her. He also said if she called the police, she would be "done before they hit the corner." He told her if she called her son, he would kill her son as well. These threats frightened Charlene because of defendant's "violent criminal past." Accordingly, she did not immediately call the police or her son.
>
> Defendant made Charlene clean the blood off herself, the floors, and the sheets. She continued to follow defendant's directions, because she remained afraid of him because of his "violent criminal past." After she cleaned up her blood, defendant told her to lay down, which she did because she remained afraid of defendant because of his "violent criminal past." Eventually, she fell asleep. The following morning, when defendant left the house and went to the store, Charlene called 9–1–1 and defendant's parole agent to report the previous evening's assault. Then she called her son.
>
> The police took Charlene's statement and photographs of her injuries. She had bruises on her leg and back, a contusion and swelling to her nose, a cut lip, and a sore head. Defendant was arrested away from the home.
>
> Subsequently, Charlene visited defendant in jail, deposited money into his jail account, and wrote him letters. In those letters she told

> him she still cared for him, but was moving his things out of the home. Charlene acknowledged that while defendant was in jail, she cashed some of his worker's compensation checks and not all of the money went to defendant.
>
> Charlene underwent domestic violence counseling, during which defendant wrote her letters trying to persuade her to drop the case, stay away from court and make herself unavailable. He assured her "it" would never happen again. Defendant also enlisted his mother's aid in attempting to convince Charlene to drop the charges against him.
>
> Defendant sent Charlene numerous letters, including one in which he apologized for what had happened between them. Defendant called Charlene from jail up to 20 times a day, until she obtained a restraining order. In January 2009, Charlene filed for divorce and the divorce was finalized in September or October 2009.

People v. Bontemps, 2012 WL 687064, at *1-2 (Cal. Ct. App. 2012).

*Discussion*

The legal standards applicable to each issue are set forth in the appropriate sections below.

### A. Admission of the "Violent Criminal Past" Evidence

The defense made a motion to bifurcate and sanitize evidence of prior convictions, along with a motion to exclude references to petitioner's parole status and uncharged " bad acts." The prior convictions included two gang related attempted murder convictions. Petitioner had told his spousal abuse victim that the attempted murder victims had indeed died; he also told her that his baby's mother had jumped out of a three story building trying to escape his violence. However, when the motion to bifurcate was denied, the trial court finding the prior convictions relevant to the criminal threats count,[2] defense counsel agreed with the prosecution to limit reference to the prior convictions/acts to petitioner's "violent criminal past."

Despite the relevance of his past acts to the criminal threats count, petitioner believes his due process rights were violated even admitting just the sanitized version of those acts since these would show his bad character, i.e., that since he had a propensity to be violent in the past, the jury might conclude from past evidence that he was violent towards the spousal

---

[2] The prosecution had to show that the spousal abuse victim was in sustained fear from petitioner's threats. Her knowledge of petitioner's past was relevant to her state of mind.

victim in this case. However, this due process claim runs afoul of the AEDPA requirement that a claim be based on established Supreme Court authority. The Supreme Court in <u>Estelle v. McGuire</u>, 502 U.S. 62, 75 (n.5), 112 S. Ct. 475 (1991), expressly reserved ruling on the issue of propensity evidence. <u>See</u> <u>Alberni v. McDaniel</u>, 458 F.3d 860, 864 (9th Cir.2006) (recognizing that the Supreme Court's reservation of the issue of propensity evidence as a due process violation doomed petitioner's due process argument therein). <u>See</u> also <u>Holley v. Yarborough</u>, 568 F.3d 1091, 1101 (9th Cir. 2009); <u>Mejia v. Garcia</u>, 534 F.3d 1036, 1047 (9th Cir. 2008). Because violation of clearly established law as pronounced by the United States Supreme Court is the *sine qua non* for an AEDPA violation, <u>see</u> <u>Holgerson v. Knowles</u>, 309 F.3d 1200, 1202 (9th Cir. 2002) (habeas relief not warranted if due process violation not clearly established by the Supreme Court), and such pronouncement is not available for the character/propensity evidence issue,[3] petitioner is left to claiming that the interpretation of California law by California courts was wrong—itself a non-actionable claim in federal habeas. <u>Estelle</u>, supra.

Thus, it does not matter whether or not the California courts were correct—the propensity evidence claim is not AEDPA actionable under any rubric.

B. <u>Ineffective Assistance of Counsel</u>

Petitioner claims his counsel was ineffective for not moving to exclude the propensity evidence altogether, and in failing to ask for a limiting instruction, if the trial court were to allow the propensity evidence. The basic requirements to establish ineffective assistance of counsel are well known, and require only a summary here: (1) counsel's representation fell below an objective standard of reasonableness under prevailing professional norms; (2) there exist a reasonable probability that but for the ineffective assistance, the result (here the outcome of the trial) would have been favorable to petitioner, i.e., the ineffective assistance undermines confidence in the outcome. <u>Strickland v. Washington</u>, 466 U.S. 668, 687, 104 S. Ct. 2052 (1984). However, if the state courts deny an ineffective assistance claim on the merits, a federal court

---

[3] As held by <u>Alberni</u>, petitioner's reliance on the non-AEDPA case of <u>McKinney v. Rees</u>, 993 F.2d 1378 (9th Cir. 1993), which did hold unduly prejudicial propensity evidence as violative of due process, is of no avail.

proceeding in habeas may not find in favor of petitioner unless the state courts were AEDPA unreasonable in not finding the two requirements of Strickland.

The Supreme Court has set forth the operative standard for federal habeas review of state court decisions under AEDPA as follows: "For purposes of § 2254(d)(1), 'an unreasonable application of federal law is different from an incorrect application of federal law.'" Harrington v. Richter, __U.S.__. 131 S. Ct. 770, 785, citing Williams v. Taylor, 529 U.S. 362, 410, 120 S. Ct. 1495 (2000). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Id. at 786, citing Yarborough v. Alvarado, 541 U.S. 652, 664, 124 S. Ct. 2140 (2004).

Accordingly, "a habeas court must determine what arguments or theories supported or … could have supported[ ] the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court." Id. "Evaluating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." Id. Emphasizing the stringency of this standard, which "stops short of imposing a complete bar of federal court relitigation of claims already rejected in state court proceedings[,]" the Supreme Court has cautioned that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id., citing Lockyer v. Andrade, 538 U.S. 63, 75, 123 S. Ct. 1166, 155 L.Ed.2d 144 (2003).

A practitioner cannot be ineffective for failing to protect federal due process rights if there does not exist a violation of due process for the claimed error. That is so for the present case.[4] However, one can fail to act under state law in such a way that one's Sixth Amendment

---

[4] The undersigned need not analyze whether counsel's effective representation responsibilities with respect to federal law are judged under AEDPA's strict standard, or general federal law which would permit cases like McKinney, see footnote 3 above, to be considered in assessing counsel's actions. For the reasons expressed in the text concerning effectiveness under state law, counsel's actions would also not be deficient under any standard of federal law.

5

right to effective counsel is violated. Nevertheless, the state court fully analyzed counsel's actions in stipulating to a sanitized version of potential propensity evidence and "failing" to ask for a limiting instruction. Thus the decision of the state courts would have to be AEDPA unreasonable on this issue before petitioner could prevail.

> Charlene testified she was aware of defendant's prior convictions, including two gang-related attempted murder convictions in which he admitted shooting two people in the head. Although they were alive at the time of trial, defendant told her both victims ultimately died as a result of the injuries he inflicted. He also told her he felt guilty because his baby's mother jumped out of a three story building trying to escape him. Charlene testified her knowledge of defendant's past affected her fearfulness as a result of his threats.
>
> The court granted defendant's motion to exclude references to his gang involvement and uncharged acts. However, the court found Charlene's knowledge of defendant's prior convictions was relevant on the sustained fear element of criminal threats and found it was admissible. Defense counsel and the prosecution then agreed that any reference to defendant's past convictions would be sanitized by using the phrase "violent criminal past." Defense counsel indicated he thought the word "violent" was better than "serious," as the latter could include sexual offenses.
>
> ****
>
> Here, counsel's effort to sanitize defendant's criminal history was not ineffective assistance of counsel. To the contrary, the stipulation to have this evidence referred to as defendant's "violent criminal past," rather than allowing admission of the details of his history significantly reduced the potential inflammatory effect of the evidence. As above, the specific nature of defendant's criminal past and the fact that he had shared that information with Charlene was relevant not only to Charlene's fear of defendant and whether it was reasonable, but also to defendant's specific intent. By virtue of counsel's stipulation, rather than being told defendant had two attempted murder convictions that he had told Charlene about, the jury learned only that he had an unspecified violent criminal history. This was a reasonable tactical decision for counsel to make.
>
>  Nor can we say that counsel's failure to request a limiting instruction concerning defendant's "violent criminal past" demonstrated ineffective assistance of counsel. "'A reasonable attorney may have tactically concluded that the risk of a limiting instruction ... outweighed the questionable benefits such instruction would provide.' [Citations.]" (People v. Hernandez (2004) 33 Cal.4th 1040, 1053.) The evidence was admissible to establish the fact of Charlene's fear and the reasonableness of that fear under the circumstances. While the jury could not consider this evidence to show defendant was a person of bad character or disposed to violent behavior, there was no suggestion in this case that the evidence could be used for that purpose. Neither the nature of defendant's

> prior felony convictions nor the underlying conduct supporting them was before the jury. Defendant's prior criminal conduct was not a dominant part of the evidence against him, represented only a small portion of the trial testimony and as presented concerned only one of the several charges against defendant. Under the circumstances, counsel may have deemed it unwise to call further attention to defendant's criminal history by requesting an instruction on it. (People v. Hinton (2006) 37 Cal.4th 839, 878; Hernandez, at p. 1053.) Counsel's tactical decisions were reasonable and did not render his provision of assistance ineffective. People v. Bontemps, supra, at *3-4.

Defense counsel was faced with a bad hand to play regarding petitioner's past convictions. Although quite violent, they were most assuredly relevant and important with respect to the criminal threats charge. Indeed, this was the evidence, strictly limited in description, which played a large role in determining whether the spousal victim had sustained fear, and why she would have such fear. A "threat" made by someone who never exhibited violent tendencies might well be viewed by the person to whom the statement was directed as more like hyperbole, as opposed to a person whose propensity to act out the violent statements was well known by the person to whom the statements were directed. Just because evidence of past acts could possibly be used in an errant fashion, or could well be viewed to be prejudicial, does not mean that the evidence is so unduly prejudicial that it must be kept from the trier of fact regardless of its relevance and materiality. See e.g. United States v. LeMay, 260 F.3d 1018, 1027-1031 (9th Cir. 2001) (upholding the use of prior acts evidence both facially, and as applied, in federal sex offender prosecutions.

Moreover, as noted previously, the evidence of prior convictions/bad acts/ was sanitized to "violent criminal history." To an average juror, this could well have connoted only a history of simple assaultive type behavior as opposed to attempted murder. Petitioner received all the process he was due when the past bad act evidence was sanitized.

Finally, it simply cannot be said that the Court of Appeal's analysis of counsel's actions in not asking for a limiting instruction (not wishing to highlight the rather limited in description evidence) was beyond the pale of reasonableness. The limitation would have been somewhat meaningless in this case in that the important use of the evidence was to help sustain

the prosecutor's burden of showing that the victim had a sustained fear from the threats and the defendant had the specific intent to utter the threats.[5] As noted by the Court of Appeal, the evidence was not used by the prosecution to show the fact of spousal abuse *per se*; the jury was directed to its proper usage.

### C. The Romero[6] Issue

Petitioner asserts that the trial court abused its discretion in not "striking a strike" which would have made petitioner ineligible for the life term which was imposed. Of course, this is not the proper issue in federal habeas as the state court's application of state law cannot be reviewed in federal habeas except under the most arbitrary of bases for its application. Bradshaw v. Richey, 546 U.S. 74, 76, 126 S. Ct. 602 (2005). Also, no provision of the Constitution speaks to any right to have a prior conviction not considered in sentencing. See Apprendi v. New Jersey, 530 U.S. 466, 490, 120 S. Ct. 2348 (2000). Thus, the federal issue, and only issue reviewable here, if it had been exhausted before the California Supreme Court, is one of disproportionate sentencing under the Eighth Amendment. See Crosby v. Schwartz, 678 F.3d 784, 791-92 (9th Cir. 2012); Gonzalez v. Duncan, 551 F.3d 875 (9th Cir. 2008) (a case in which the state trial court had refused to "strike a strike" pursuant to a Romero motion).

The undersigned will leave the non-raised issue as just that—not presently able to be reviewed as it was neither raised nor exhausted. However, should petitioner raise this unexhausted Eighth Amendment issue before the district judge on objections, a type of informal amendment on review of objections sometimes permitted by the Ninth Circuit in the experience of the undersigned, petitioner should know that only two scenarios are capable of being obtained: a stay of this now federal "mixed petition" case and remand to state court for exhaustion of the

---

[5] "To establish the offense of making a criminal threat, the prosecution had to prove that defendant acted with the specific intent his statement be taken as a threat, that the threat caused Charlene to be in sustained fear and that her fear was reasonable under the circumstances. (§422.) A defendant's prior criminal and violent conduct are relevant to establish these elements. (People v. Garrett, 30 Cal.App.4th 962, 966 (1994); see also People v. Allen, 33 Cal.App.4th 1149, 1156. (1995) "'Seldom will evidence of a defendant's prior criminal conduct be ruled inadmissible when it is the primary basis for establishing a crucial element of the charged offense.'" (Garrett, at p. 967.)" People v. Bontemps at * 3.

[6] People v. Romero, 13 Cal. 4th 497, 53 Cal. Rptr. 2d 789 (1996).

Eighth Amendment issue, or an outright denial of the unexhausted claim as 28 U.S.C. § 2254(b)(2) permits only a *denial* of an unexhausted claim.  In all probability, an amended claim based on the Eighth Amendment given petitioner's serious criminal record would ultimately fail.  Compare Crosby with Gonzalez.  In addition, the crimes for which petitioner was convicted herein (the third strike) do not involve a mere failure to file, or timely file, a sex offender registration, in the scheme of things a less serious criminal offense, as was the situation in the two cases cited above.  Rather, petitioner was convicted of serious and violent spousal abuse crimes in this case *and* he had a very serious past criminal record.

*Conclusion*

Accordingly, the Clerk is ORDERED to assign a district judge to this case.

It is hereby RECOMMENDED THAT THE PETITION BE DENIED.  No Certificate of Appealability should issue in this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: June 27, 2013

/s/ Gregory G. Hollows
GREGORY G. HOLLOWS
UNITED STATES MAGISTRATE JUDGE